The opinion of the Court was delivered by
O’Neall, J.
In this case I will take up the prisoner’s 5th ground first; for if the evidence to which it relates was properly before the jury, then it constitutes a strong circumstance, *503 indeed an almost insuperable one, showing the guilt of the prisoner.
I have never had any reason to doubt that the papers were properly proved by De la Hay ; but, as is said in the report, if there was any objection to that proof, it was obviated by the evidence of John Smith, who proved the papers to be the writing of the prisoner, according to every requirement! It is therefore unnecessary to notice that ground further.
Taking up the other grounds, in the order in nvhich they are set down, I will proceed to their consideration.
1st. This ground supposes, that the possession by the prisoner in Alabama of a slave, stolen in Laurens, So. Ca., by some one, five months after the larceny, was no evidence of the prisoner’s guilt. The presiding Judge instructed the jury that it might be. This instruction is to be understood, as applying to the case then proved; and therefore, that the fact of possession of a slave stolen in this State, in another State, five months after the larceny, unless explained or accounted for, would be evidence of the larceny committed in Laurens, So. Ca., not conclusive, but to be weighed with the other facts. The rule is stated 2 East. P. C., 656, § 93, thus: “ It may be laid down generally, that whenever the property of one man, which has been taken from him without his knowledge or consent, is found upon another, it is incumbent on that other to prove how he came by it; otherwise, the presumption is that he obtained it feloniously.” This presumption, as the author remarks, is strengthened, weakened or rebutted, by concomitant circumstances. The length of time between the finding of the goods, and the theft, is one of the circumstances weakening it, from the difficulty of identifying the goods, or of accounting for the possession, or the facility of changing hands. The prisoner has had the full benefit of the length of time; for the jury were told that they might consider the length of time, and if in the case of a stolen slave, they thought it enough to negative the presumption of guilt, the.prisoner ought to have the benefit of it.
It is true, as my report shows, that I advised the jury, as *504 was right and proper that I should, that I did not think it ought to have any such effect; for in the case of a slave, there was no difficulty of identification, or of accounting for the possession. Neither was he such a chattel as ordinarily passes by mere delivery, without observation or witnesses. So, too, the facilities for concealing a slave, and removal of him from place to place, were abundant reasons why time should not per se negative the presumption of guilt.
The error of the prisoner’s counsel is, in supposing that there is any artificial rule whereby any particular period of time would negative the presumption.
The cases of Rex vs. -, 12 Eng. C. L. R. 216, and Rex vs. Adams, 14 Eng. C. L. R. 474, were nisiprius cases, in which the Judges presiding advised or directed an acquittal of the prisoners, where goods had been lost, in one for sixteen months, and in the other for three, and then found in the possession of the prisoners. There was no other evidence, and in the last case the goods were an axe, a saw and a mattock. In such a case, it is clear that the presumption was too weak to justify a conviction. But even in that case, and the preceding one, the Court merely held, that the evidence was not enough to convict. In this case the presumption had abundant other evidence to fortify and strengthen it. The facts that the prisoner swapped his valuable wagon for an old, worthless carriage ; that he put to it two horses — placed in it poor — and started the slave in it from Montgomery, on the 24th December, 1852, with the papers mentioned; and notwithstanding the slave was taken up, and the carriage and horses kept for months, and finally the carriage and one horse were sold (the other horse having died), yet the prisoner never appeared to claim either slave, carriage or horses, are very strong to show his guilt.
I have assumed that the slave had the papers mentioned in the report, and now to be noticed; for that was one of the matters on which the jury passed, and which they have affirmed. The first of these literally copied appears to be as follows: 1st. “Permit this boy and carriag to pass from Montgumray to Yeuton *505 Green county the peapal will please let him hav Feed for himself and horses — he rvill pay for it. December 24th, 1852,” signed, “T. S. Jones.” 2nd. “Permit thes negros to pass from Greens Burow to Jones Burow thence to Eleton then to Ash-ville Sincler county then to Tarkey-town then to Pollards Bluff on Goosy River to Tillman Watson the peapal will pleas let them have food for themselves and horses they will pay you for it,” signed “T. S. Jones.” 3rd. A letter addressed on the outside, “ Mr. Williams the Oxener at Greens Burow Alibay.” This had been sealed with a wafer. It, on being opened, was found to be written literally as follows: “ Mr. Williams the Oxener at Greensburer Ala will pleas tak car of my boy untill wens-day and if I am not thar by that time you will pleas send him to Jones Burow To Mr Sam Taran until I meet him thar I am gon to Mobiel and if I Seta my business thar I will com by your plais if not I shall hav to go to Tuscaloosa and I can meet my boy at Jones Burow on the stag he will pay his bills I swpt my wagon and four muls for a carriag and got badly cheated doo this and accommodat” (signed) “T. S. Jones.”
These papers are in the handwriting of the prisoner; the wretched spelling corresponds with the prisoner’s habit, as proved by Smith; they were probably written in the office of Mr. De la Hay, in an upper room, to be out of observation. The last alludes to a transaction, known only to the prisoner and De la Hay, the swap of the wagon for a carriage. When these papers are read in connection with the fact, that the slave Henry was dispatched by the prisoner on the evening of the 24th with the carriage — and it is remembered that that slave had been stolen in Laurens, So. Ca., can there be a doubt that the prisoner is the guilty thief 7 Who is T. S'. Jones? He is the prisoner, is the answer. For he wrote the name, and he is the man who swapt the wagon for the carriage. He tells us, in the letter, that the boy, as he calls him, is his. “Take care of my boy until Wednesday.” “ I can meet my boy on the stage,” are his observations. He spoke of the slave to De la Hay, as “ his.” Taking all this — with the fact that he is the only man *506 who is known to have had possession of Henry from the 28th July, 1852, when his master lost him in Laurens, So. Ca., to the 24th December, and how can there be a doubt that he must show how he came to have him in possession, or failing to do so, that the legal presumption of guilt, from the possession, must have effect.
The second ground assumes that which the finding of the jury negatives. It is true the slave was not seen by Cobb, Swearingen or Clarke; but they did not lift the cover and examine the contents of the wagon. There the slave might have been, and the jury believed was, secreted. It is true Kelly proved that the slave was not with them; that he never saw him until they reached the creek this side of Columbus, Georgia. But the jury discredited him — and I think very properly!
The 3rd and 4th grounds assume that- the prisoner obtained possession of the slave from T. S. Jones at Columbus, Georgia. This the jury have also negatived. It rested altogether upon the proof of Kelly and Lewis — neither was believed, or ought to have been believed. The fact, that unwarily escaped Lewis, that he had seen Jones’s signature to a paper, in the possession of the prisoner, and that the initials of his name were “ J. H.” showed that Jones was a fiction, and like most cases of this kind, was a prepared man to account for an act of villany.
The sixth ground rests mainly on the same false assumption. The jury did not believe that the prisoner acquired possession of the slave at Columbus, Georgia, or at Montgomery, Alabama. They believed that he obtained possession in Laurens, So. Ca. He was there stolen. The prisoner is found in possession of him in Georgia and Alabama, and the facts shown in the prisoner’s defence all go to fortify the legal presumption from possession, that he stole the slave. This of course reaches back to the time and place, where the larceny was committed 1 If the ground could be sustained, it would be impossible to convict the prisoner of any crime in South-Carolina, Georgia, or Alabama. For if it were true, that the possession in Alabama of property stolen in this State, was no evidence of guilt here, *507 the prisoner must be acquitted here; when tried in Alabama, he would prove the slave was stolen in South-Carolina, and he must be acquitted there. Such absurd consequences show the falsehood of the ground. The error is in supposing that possession is the crime, when it is only the evidence of it.
The seventh ground needs no comment: the facts too plainly show the guilt of the prisoner.
The motion is dismissed.
Wardlaw, Withers, Whitner, Glover and Munro, JJ., concurred.

Motion dismissed.